The supersedeas was granted by me in this case, from doubts which I entertained respecting the true construction of the act of 1773 for the relief of insolvent debtors; thinking it better that a question concerning the liberty of a citizen should be deliberately settled, though at the expense of delay to a creditor, than that an unfortunate debtor, who had surrendered all his substance, should, by a life of imprisonment, be prevented from acquiring more, under (105) the force of expressions not in themselves clear and satisfactory. I cannot, however, discover, in the act, considered alone, any sufficient ground upon which he is entitled to a discharge: and were there no other source of relief, I fear the supersedeas
would be discharged.
It is evident from every part of the first branch of the act, that notice need only be given to the creditors at whose instance the party is imprisoned, and that the discharge only operates against their claims; the words being "and shall stand forever discharged of all such debts so sued for," that is, in reference to the preceding expressions "taken or charged on mesne process or execution for any debt:" so that although a suit be instituted, yet unless the debtor be charged in execution on such suit, the discharge as to that creditor operates nothing. The words of the second branch are also "taken or charged on mesne process or execution," and the notice is to be given "to the creditor or creditors at whose suit the prisoner is confined." The seventh section directs that the person of the debtor so discharged shall never be arrested for the same debt. The eighth section, in providing for giving notice where the creditor lives out of the state, employs the same limited expressions "of creditors at whose suit the debtor is charged:" — But the doubt arose from the sixth clause, which directs the commissioners to examine into the claims of all the creditors, as well as those at whose suit the commitment has taken place, as of all other; and provides for a distribution amongst all the creditors appearing, in proportion to their demands.
It seems at first view entirely unjust that where the property was surrendered for the benefit of all the creditors, any of them should be allowed afterwards to charge the debtor in execution, supposing everything to have been fairly transacted on his part; and it was supposed the act intended to operate like a bankrupt law, after a fair surrender, the debtor (106) is discharged as to all creditors. A closer examination *Page 85 
of the law shews that it designed only to discharge the debtor in those cases where the creditor appeared and availed himself of the notice to receive a dividend of the property; for the seventh clause provides "that the person of such debtor so discharged shall never be arrested for the same debt," that is, the debt described in the sixth clause, where the creditor appears and receives a part of the distribution. A creditor who has sued, but has not charged the debtor in execution, is not entitled to any notice previously to the oath being administered to the insolvent; and if neglecting the notice given by the commissioners to exhibit his claim, he does not come in and accept a dividend, there seems to be nothing in the act to restrain him from suing out a ca. sa. thereafter.
Upon examining the insolvent law of 1749, I perceive that the assignment of the property was made only for the benefit of the creditors at whose suit the debtor was imprisoned, and none other creditors were required to be summoned, nor was the person of the debtor discharged as to any other. (Swans. Coll., Sect. 4, 5, 7), which act pursued in that respect the terms of an insolvent law passed in England a few years before. The act under consideration proceeds a step further, and allows all the creditors to take benefit from the surrender; but if they elect to renounce this benefit and proceed with their suits, they are at liberty to do so.
Thus the case would stand under the act of 1773, and the effect might be, that all the creditors in succession, who did not choose to come in upon the dividend, might seize the person of the debtor, even after the fairest surrender of his property. But in 1776, the constitution provided (Sect. 39) "that the person of a debtor, where there is not a "strong presumption of fraud, shall not be confined in prison after delivering up,bona fide, all his estate, real and personal, for the use of his creditors, in such manner as shall hereafter be regulated (107) by law." To give efficacy to this provision, it was necessary that a future legislature should regulate the manner in which a debtor should surrender his property; but this might be done either by enacting a new law, or reinforcing an old one; and the latter method has been pursued. In 1778, all acts of assembly are put in force, which are not inconsistent with the freedom and independence of the state, and with the new form of government; and I take it to be a necessary implication, such as are not likewise incompatible with the constitution then recently established. The consequence of this is, that the act of 1773, is in force so far as it regulates the surrender of the property and the discharge of the person; but is annulled *Page 86 
so far as its construction tends to an unjust, unnecessary and cruel imprisonment of an honest but unfortunate debtor. This outrage on the rights of humanity, falls before the benign influence of a free constitution, and with other remnants of our colonial condition, is consigned to the oblivion it merits — The applicant is entitled to his discharge and to the Writ of Supersedeas which he prays for.